

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 01-6215-CR-JORDAN/BANDSTRA

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

WILLIAM P. TRAINOR,

      Defendant.
_____/

**CORRECTED MOTION TO DISMISS COUNTS 1-10, 12-14, AND 16-21
OF THE SUPERSEDING INDICTMENT AS BEING BARRED
BY THE STATUTE OF LIMITATIONS**

    William Trainor, through undersigned counsel, hereby respectfully requests this Court to dismiss certain counts of the indictment as being barred by the statute of limitations. In support thereof, he says:

    1.    On September 20, 2001, the grand jury issued a twenty-one count indictment against William Trainor.[1] The charges center around acts regarding a publicly traded company, Novatek International, Inc.(hereinafter referred to as "Novatek").

    2.    Counts 1 through 11 of the indictment set forth a series of allegedly fraudulent

---

[1] On June 13, 2002, the grand jury issued a superseding indictment adding three tax evasion counts to the original charges.

wire communications. These alleged wire communications occurred between April 30, 1996 and September 26, 1996. All but one of these communications, the September 26th wire communication (Count 11), occurred more than five years before the grand jury issued the indictment.

3. Counts 12-21 set forth a series of purported money laundering transactions. These alleged transactions allegedly occurred between March 13, 1996 and October 3, 1996. All but one of these transactions, the October 3, 1996 transaction (Count 15), occurred more than five years before the grand jury issued the indictment.

4. The Securities and Exchange Commission (SEC) began investigating the acts that are the focus of the grand jury's indictment in October 1996. As a result of this investigation, in June 1998, the SEC filed a complaint against Mr. Trainor, Vincent D. Celentano (a defendant in a related case, *United States v. Celentano*, 01-6179-CR-WDF), and others. The civil complaint, *SEC v. Trainor, et al.*, 98-CV-01533-EGS (D. D.C.) filed against Mr. Trainor alleged the same facts that the government alleges in this case. Essentially, the SEC alleged that, through a series of sham transactions (the last of which in occurred in April 1996) between Novatek and Medical Products, Inc (MPI), Novatek acquired a license to distribute medical diagnostic test kits in South America and Latin America. The SEC further alleged that Novatek accounted for the transaction as a Novatek acquisition of MPI, and valued the license in

excess of $50 million. Subsequently, the § alleged, Mr. Trainor and Celentano caused the price of Novatek to increase by knowingly or recklessly causing Novatek to issue a series of false and misleading press releases.

5. Prior to the issuance of the indictment, on January 21, 2000, Thomas G. Snow, the Deputy Director of the Office of International Affairs, Criminal Division, United States Department of Justice made a written request to the Central Authority of Switzerland for assistance in *SEC v. Trainor, et al.* Through this letter, Mr. Snow sought documents and testimony from private citizen Andreas Schweitzer regarding Novatek and purportedly related entities, Mr. Trainor, Celentano, and others.

6. Apparently, the Swiss Central Authority did not receive Mr. Snow's request until October 23, 2000 (over 10 months later).

7. On April 6, 2001, the prosecutor filed a sealed *ex parte* motion with the district court to suspend the running of the statue of limitations pending receipt of evidence from Switzerland with regard to the investigation against Mr. Trainor.

8. On May 10, 2001, the district court in a sealed *ex parte* order granted the aforementioned motion.

9.   Sixteen months after the receipt of the request by the Swiss Central Authority, (and five months after Mr. Trainor's indictment), on February 21, 2002, Swiss Judge Carole Barbey filed the official statement of her interview with Mr. Andreas Schweitzer. On March 1, 2002, the Swiss Central Authority transmitted to Mr. Jack Patrick, various documents resulting from the execution of this request.

## MEMORANDUM OF LAW

In federal court, the statute of limitations for the overwhelming majority of offenses is five years. 18 U.S.C. § 3282. This statute of limitation protects an accused's right to defend himself and obtain a timely resolution of criminal charges. The Supreme Court in *Toussie v. United States*, 397 U.S. 112 (1970) observed that "[t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Id.* at 114-15.

Because of the importance of these rights, the statute of limitations has been strictly interpreted by the courts. *See United States v. Habig*, 390 U.S. 222, 227 (1968) (indicating that criminal statutes of limitation are to be liberally interpreted in favor of repose). In *United States v. Marion*, 404 U.S. 307, 322-23 (1971), the Supreme Court explained the reason for strict adherence to statutes of limitations:

> [T]he applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges. Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may (during the limitation) . . . have lost their means of defence. These statutes provide predictability

4

> by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.

*Id.* at 322-23 (internal quotation marks and citations omitted). As these bedrock principles indicate, this Court should strictly interpret any attempt by the government to extend the statute of limitations in this case.

In wire fraud cases, the period of limitations commences to run from the date of the alleged sue of a wire. *United States v. Gross*, 416 F.2d 1205, 1210 (8th Cir. 1969). Similarly,
the statute of limitations for money laundering offenses begin to run on the date of the transaction. *United States v. v. Li*, 856 F.Supp. 421 (N.D.Ill.1994), *affirmed*, 55 F.3d 325 (7th Cir. 1995). So, absent any suspension of the statute of limitations, the charges contained in Counts 1-10, 12-14, and 16-21 of the superseding indictment are barred by the statute of limitations.

Undoubtedly, the government will attempt to save the aforementioned charges from repose by resort to 18 U.S.C. § 3292. Section 3292 concerns the suspension of limitations to permit United States to obtain foreign evidence. This section provides in pertinent part:

> (a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.
>
> (2) The court shall rule upon such application not later than

thirty days after the filing of the application.

As detailed below, any attempt by the government to save the aforementioned counts from repose would be futile. Strict adherence to constitutional protections and statutory mandates require that the Court dismiss Counts 1-10, 12-14, and 16-21 of the superseding indictment as being barred by the statute of limitations.

### A. The district court was without jurisdiction to suspend the running of the statute of limitations

As an initial matter, the district court was without jurisdiction to enter the suspension order against Mr. Trainor. Section 3292 clearly requires that the court **shall** rule upon such application not later than thirty days after the filing of the application. 18 U.S.C. § 3292(a)(2). In this case, the court did not rule within 30 days as required by the statute. After the 30-day time limit had elapsed, the district court simply did not have the power or authority to enter the order suspending the statute of limitations against Mr. Trainor.

Rule 35(c) is a useful analogue. Under Rule 35(c), the district court may within seven days after the imposition of sentence, . . .correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(c). The Eleventh Circuit Court of Appeals "has conclusively held that 'the seven-day limitation is a jurisdictional restriction.'" *United States v. Diaz-Clark*, 292 F.3d 1310, 1317 (11th Cir. 2002) (*quoting United States v. Morrison*, 2o4 F.3d 1091, 1093 (11th Cir. 2000). "Therefore, a court's modification of a sentence outside of this seven-day period is an action taken without the requisite jurisdiction, and is a legal nullity." *Diaz-Clark*, 292 F.3d at 1317.

Like Rule 35(c), § 3292 gives the district court a fixed amount of time within which to act. If no action is taken within this time-period, then any subsequent action is a legal nullity. In Mr. Trainor's case, the district court failed to act within the prescribed time-period. After the time-period had elapsed, the district court lost jurisdiction to consider the government's application. The district court's subsequent order was a legal

nullity. As such, the district court's order did not suspend the statute of limitations against Mr. Trainor, and Counts 1-10, 12-14, and 16-21 of the superseding indictment are time-barred.

**B.     The *Ex Parte* Procedure Employed by the Prosecutor and the District Court Violated Mr. Trainor's Fifth Amendment Due Process Right and is in Contravention of the Statute**

In obtaining the suspension order against Mr. Trainor, the government filed a sealed *ex* parte application. The district court, in turn, considered the application under seal, and issued an *ex parte* order. These secret proceedings against Mr. Trainor violated his Fifth Amendment right to due process and his statutory right to an adversarial hearing prior to the Court's ruling upon the application.

*Ex parte* communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing "requires a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18 (1938). Here, Mr. Trainor did not have any opportunity to present evidence in opposition to the prosecutor's assertion that the statute of limitations should be tolled, and, in fact, did not know that the statute of limitations was tolled until he received the indictment.

In *In Re Grand Jury Investigation*, 3 F.Supp.2d 82 (D. Mass.), the district court articulated several compelling reasons why *ex parte* applications for tolling should not be granted. In particular, the court stated that "nothing in § 3292 . . . expressly contemplates secretly extending certain statutes of limitations as to certain individuals. Such a course would implicate due process concerns . . . . Moreover, this Court generally eschews ex parte practice whenever possible, since ex parte so fundamentally undercuts the values secured by the adversary process." *Id.* at 83.

Section 3292 "should not be an affirmative benefit to prosecutors, suspending the statute of limitations period, pending completion of an investigation, whenever evidence is located in a foreign land. It is not a statutory grant of authority to extend the

limitations period by three years at the prosecutor's option. *United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998). Due process requires that the prosecutor prove the merits of his application for tolling through the adversarial process, with notice to the target and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)(observing that it is a fundamental tenet of due process the when the government deprives an individual of a protected liberty interest that individual must be afforded not only adequate notice but also a reasonable opportunity to be heard).

Aside from a due process right to an adversarial hearing, a requirement that a grand jury target be noticed is implicit in the language and structure of § 3292. To receive a tolling order, the statute provides, the government must establish proof by a "preponderance of evidence." 18 U.S.C. § 3292(b).By establishing a preponderance standard, the statute clearly mandates an adversarial hearing in which the district court will hear evidence and argument from each side prior to resolving the issue. Compare 18 U.S.C. § 3292(b) (setting forth preponderance standard *with* 18 U.S.C. § 2518(3)(a) (providing for probable cause standard for order authorizing electronic surveillance).

In *Addington v. Texas*, 441 U.S. 418 (1979), the Supreme Court, by a unanimous vote of the participating Justices, declared: "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Id.*, at 423, *quoting In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring). *Addington* instructs that, in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants. Thus, while private parties may be interested intensely in a civil dispute over money damages, application of a "fair preponderance of the evidence" standard indicates both society's "minimal concern with the outcome," and a conclusion that the litigants should "share the risk of error in roughly equal fashion."

8

441 U.S. at 423.

For the litigants to "share the risk of error in roughly equal fashion," there must be notice and an opportunity to be heard. Mr. Trainor was not given notice or the opportunity to be heard, and thus his Fifth Amendment right to Due Process was violated, and his right under § 3292. As a result of these constitutional and statutory violations, the district court's suspension order should be deemed a nullity and Counts 1-10, 12-14, and 16-21 of the superseding indictment are time-barred.

### C. The government did not exercise due diligence in pursuing the foreign records and therefore no time should be tolled

Due diligence should require that the government take reasonable measures to pursue the foreign evidence listed in the official request. Due process will not permit the government to make an official request and then fail to pursue the purported evidence with due diligence. Rather, if the foreign jurisdiction does not respond to the request in a timely manner, the government must make inquiry and take all measures to obtain an expeditious response. Any period of time during which the government does not exercise such diligence should accordingly be excluded from the tolling provided by statute. See 18 U.S.C. 3161(h)(3)(B)(imposing due diligence requirement for government in securing presence of defendant for trial). A due diligence obligation is not onerous. In construing other statutes which require due diligence on the part of prosecutors, such as statutes setting time limits on readiness for trial, courts have achieved a satisfactory balance of the government's needs and obligations. *See id.*

In this case, the government did not exercise due diligence in obtaining the records from Switzerland. First, Mr. Snow made the government's request in January 2000. Apparently, the government did not transmit the request to the Swiss Central Authority until October 23, 2000

On April 6, 2001, the prosecutor filed a sealed *ex parte* application with the district court to suspend the running of the statue of limitations pending receipt of

evidence from Switzerland with regard to the investigation against Mr. Trainor. Sixteen months after the receipt of the request by the Swiss Central Authority, (and five months after Mr. Trainor's indictment), on February 21, 2002, Swiss Judge Carole Barbey filed the official statement of her interview with Mr. Andreas Schweitzer. On March 1, 2002, the Swiss Central Authority transmitted to Mr. Jack Patrick, various documents resulting from the execution of this request.

From a review of the papers disclosed to the defense, the government did not vigorously pursue the requested documents. Rather, the government filed the request with the Swiss Central Authority and the matter remained dormant. The Swiss Central Authority did not respond to the request in a timely manner. Therefore, the government had the obligation to make inquiry and take all measures to obtain an expeditious response. The government did not. The period of time during which the government did not exercise such diligence should be excluded from the tolling provided by statute. *See* 18 U.S.C. 3161(h)(3)(B)(imposing due diligence requirement for government in securing presence of defendant for trial).

### C. The government did not seek material information and the statute of limitations should not have been tolled

The information that the government sought was not material and was merely incidental to the government's case. As such, the government's request did not justify tolling.

This Court should require that the evidence sought be material to the offense under investigation. In other words, the evidence being requested should at least be significant enough that the government's interest in obtaining additional time to pursue it can fairly be held to take precedence over Mr. Trainor's right to a timely completion of the investigation. A mere showing of relevancy, without materiality, does not guarantee that the evidence sought will be of sufficient importance to justify the damage to Mr. Trainor's right to finality.

As the Fifth Circuit correctly asserted, that 18 U.S.C. § 3292 "should not be an affirmative benefit to prosecutors, suspending the limitations period, pending completion of an investigation, whenever evidence is located in a foreign land."*United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998). In other words, Section 3292 should be used as a method of gaining extra time to complete an investigation which is stalled due to a foreign government's failure to provide evidence in a timely manner. It should not be utilized as a routine method of extending the statute of limitations in order to allow the prosecutor to follow other leads and complete other avenues of investigation. Simply put, 18 U.S.C. § 3292 was intended to be used only when necessary, not as a means of

11

allowing Federal prosecutors to shirk their obligation to complete investigations in a timely manner.

Absent an implied good faith obligation, Section 3292 is unquestionably an "affirmative benefit to prosecutors," going so far as to provide a nearly routine extension of the statute of limitations from five to eight years simply because evidence happens to exist in foreign countries. If the only requirement for statutory tolling is that an official request for evidence has been made pursuant to a pending grand jury investigation, the government can file a request for evidence which is marginal to its case and thus obtain additional time to pursue more promising domestic leads.

Here, the information sought from Mr. Schweitzer was at best marginal to the government's investigation. While the government's request remained dormant in Switzerland, the government used the time to pursue more promising leads, like entering into cooperation agreements with purported co-conspirators. This Court should not allow the tolling statute to act as an affirmative benefit to the prosecution in this case.

## CONCLUSION

Wherefore, William Trainor, respectfully requests that this Court dismiss Counts 1-10, 12-14, and 16-21 of the superseding indictment as being barred by the statute of limitations.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
Michael Caruso
Assistant Federal Public Defender
Florida Bar No. 0051993
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
(305) 530-7000, Ext. 135
(305) 536-4559, Fax

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing instrument was mailed the _2d_ day of October, 2002, to United States Attorney, 99 NE 4th Street, Miami, FL 33132-2111 and Jack B. Patrick, Senior Trial Attorney, Fraud Section, Criminal Division, United States Department of Justice, 10th & Constitution Avenue, N.W., Bond Building, Room 3114, Washington, DC 20005.

By: _____
Michael Caruso

J:\Trainor, William P. Reg09598-158\Pleadings\MOTION TO DISMISS.wpd

## FAXBACK SERVICE LIST

Michael Caruso, Esq.
Assistant Federal Public Defender
150 West Flagler Street
Suite 1700
Miami, Florida 33130
Tel: (305)530-7000, ext. 135
Fax: (305)536-4559
Counsel for William P. Trainor


Assistant United States Attorney's Office
99 N.E. 4th Street
Miami, Florida 33132
Tel:  (305)961-9100
Fax:  (305)530-7976
Counsel for the Government

Jack B. Patrick, Esq.
Senior Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
10th & Constitution Avenue, N.W.
Bond Building, Room 3114
Washington, D.C.  2005
Tel: (205)514-9842
Fax: (205)514-0152
Counsel for the Government