

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 01-6215-CR-JORDAN/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WILLIAM P. TRAINOR,

    Defendant.
_____/

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF CORRECTED MOTION TO DISMISS

William Trainor, through undersigned counsel, hereby respectfully files this supplemental memorandum of law as ordered by the Court.

In *United States v. Torres*, 318 F.3d 1058 (11th Cir. 2003), the Eleventh Circuit addressed what constituted "final action" under 18 U.S.C. § 3292. Finding no guidance in the statutory language itself, the Court turned to the legislative history undergirding the statute.

From this review, the Court found that the purpose of § 3292 "is to make **foreign-kept business records** more readily admissible into evidence in criminal trials in United States courts and to extend statute of limitation and Speedy Trial Act deadlines when evidence



located in foreign countries must be obtained." H.R.Rep. No. 98-907, at 2 (1984), reprinted in 1984 U.S.C.C.A.N. 3578, 3578 (emphasis added). As to the provocation for the enactment, the Court concluded that Congress was prompted to enact § 3292 as part of the Comprehensive Crime Control Act of 1984 by "[t]he [increasing] use of offshore banks to launder the proceeds of criminal activities" and the difficulty that federal prosecutors were having "in obtaining records from those banks in both the investigative and trial stages of a prosecution." *Id.* As the procedures to obtain such evidence "generally take a considerable period of time to complete," efforts to recover evidence located in foreign countries often resulted in statute of limitations problems. *Id.* at 2-3, reprinted in 1984 U.S.C.C.A.N. at 3578-79.

Although the Court found the legislative history helpful, the Court noted that Congress did not define or otherwise indicate what constituted "final action." Because the Fifth and Ninth Circuits had directly addressed the issue, the Court evaluated these decisions of their sister courts.

In *United States v. Bischel*, 61 F.3d 1429 (9th Cir.1995), the British government turned over to the United States all of the requested records, but delayed certifying their authenticity, although authentication had been requested by the U.S. government. *Id.* at 1431. Bischel argued that "final action" took place when the British government turned over all the documents. *Id.* at 1434. The prosecutors argued, and the Ninth Circuit agreed, that "final action" occurred only when the foreign government made a "dispositive response" to

every item requested-- including turning over the records and certifying their authenticity, as requested by the U.S. government. *Id.* Rejecting Bischel's argument, the Ninth Circuit refused to hold that "final action" takes place when the last of the records requested by the U.S. government had been received. *Id.* The Ninth Circuit noted that "there is no ready way of knowing when the last of anything has happened." *Id.* Instead, it pegged "final action" to a dispositive response from the foreign government to each item set out in the U.S. government's official request. *Id.* at 1433-34 (noting that "pegging 'final action' to disposition, up or down, of each of the items in the official request provides a more certain benchmark by which to measure whether the action that has been taken is 'final' or not.").

The Fifth Circuit, in *United States v. Meador*, 138 F.3d 986 (5th Cir.1998), "concur[red]" with the *Bischel* Court's reading of "final action." *Meador* held that "a determination of when 'final action' has been taken by a foreign government, within the meaning of § 3292(b), must turn on whether a dispositive response to an official request for evidence from our government has been obtained." *Id.* at 992. Turning from the general to the specific, the Court further held that "when the foreign government believes it has completed its engagement and communicates that belief to our government, that foreign government has taken a 'final action' for the purposes of § 3292(b). *Id.*

In the end, the *Torres* Court sided with *Bischel* and held that "final action" for the purposes of § 3292(b) occurs when a foreign court or authority provides a dispositive response to each of the items listed in the government's official request. *Torres*, 318 F.3d

3

at 1065. To determine whether "final action" had occurred, *Torres* instructed lower courts to undertake an "objective assessment of whether the responding country's submissions were, in fact, complete." *Id.* at 1063.

An objective assessment of in this case demonstrates that final action was taken March 30, 2001. *See* Exhibit 2 to United States' Supplemental Memorandum of Law, filed March 5, 2003. On this date, the Swiss Ministry of Justice informed the government that Schweitzer could not be found, and additional information was required before the Swiss could proceed. This statement unambiguously alerted the government that Switzerland had responded to its request as completely as possible. *See Torres*, 318 F.3d 1058, 1065 n. 12. Because "final action" occurred prior to the government's application to the district court to toll the statute of limitations, not time should be tolled. As a result, Counts 1-10, 12-14 and 16-21 of the superseding indictment should be dismissed.

Furthermore, in *Torres*, the Eleventh Circuit did not address the majority of issues raised by Mr. Trainor. Namely, the Eleventh Circuit did not decide the following: (1) whether § 3292's 30-day time limit is jurisdictional; (2) whether the *ex parte* procedure employed by the prosecutor and the district court violated Mr. Trainor's Fifth Amendment Due Process Right; (3) whether the statute of limitations should be tolled if the government did not exercise due diligence; (4) and whether the statute of limitations should be tolled if the prosecutor did not seek material information. These arguments gain further force because of a disclosure in the government's supplemental memorandum.

4

For the first time, the defense has learned that less than two weeks prior to the government's application to the district court the Swiss Ministry of Justice informed the United States Department of Justice that they "were not [] able to locate [Schweitzer] at the address provided [Seestrosso No. 1 Cham 6330, Switzerland]. . . ." *See* Exhibit 2 to United States' Supplemental Memorandum of Law, filed March 5, 2003. In addition, the Swiss were not able to find Schweitzer's firm in Switzerland. *Id.* Yet, the government's *ex parte* application to the district court in April 2001 neglected to mention this fact, and thus violated Mr. Trainor's Fifth Amendment right to due process.

The government's supplemental memorandum also demonstrates that district court erred by granting the government's application to suspend the statute of limitations. Under § 3292(a)(1) the government must prove by a preponderance of evidence that the evidence requested "reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." Based upon the government's disclosure, the government did not meet this burden and the district court erred by granting the application.

In April 2001, the time at which the government made the application to the district court, it did not "reasonably appear" that the requested evidence was in Switzerland. This is so because on March 30, 2001, the Swiss Ministry of Justice informed the United States Department of Justice that they "were not [] able to locate [Schweitzer] at the address provided [Seestrosso No. 1 Cham 6330, Switzerland]. . . ." *See* Exhibit 2 to United States'

Supplemental Memorandum of Law, filed March 5, 2003. In addition, the Swiss were not able to find Schweitzer's firm in Switzerland. *Id.* The government's *ex parte* application to the district court neglected to mention this fact.

Rather, the government asserted to the district court that Schweitzer had been identified as a "Swiss resident" and identified his business address in Switzerland. The government made this representation to the district court less than two weeks after the government had been informed by the Swiss Ministry of Justice that there was no Andreas Schweitzer at the Swiss address given and that Schweitzer's firm could not be located in Switzerland. Therefore, at the time the government made application to the district court it could not have reasonably appeared the either Schweitzer or documents in his possession were in Switzerland.

Moreover, there is no representation in the government's application that business records or materials reasonably appeared to be in Switzerland. The government merely proffered that Schweitzer was "believed" to be a Swiss resident and businessman, but gave the district court absolutely no indication that records or documents reasonably appeared to be in Switzerland. The district court thus erred by granting the government's application to toll the statute of limitations.

As is clear from the *Torres* Court's interpretation of § 3292, the district court also erred by granting the government's application so that Schweitzer could be "interviewed." There is no support in the legislative history as reviewed by the *Torres* Court that the

government can toll a statute of limitations to "interview" a person. The *Torres* Court found that the purpose of § 3292 "is to make **foreign-kept business records** more readily admissible into evidence in criminal trials in United States courts and to extend statute of limitation and Speedy Trial Act deadlines when evidence located in foreign countries must be obtained." H.R.Rep. No. 98-907, at 2 (1984), reprinted in 1984 U.S.C.C.A.N. 3578, 3578. Section 3292 applies only to the request for documentary evidence.

Section 3292 "should not be an affirmative benefit to prosecutors, suspending the statute of limitations period, pending completion of an investigation, whenever evidence is located in a foreign land. It is not a statutory grant of authority to extend the limitations period by three years at the prosecutor's option. *United States v. Meador*, 138 F.3d 986, 994 (5th Cir. 1998). For all the reasons set forth in this supplemental memorandum, and in previous pleadings, Mr. Trainor respectfully requests that this Court dismiss Counts 1-10, 12-14, and 16-21 of the superseding indictment as being barred by the statute of

9

limitations.

                          Respectfully submitted,

                          KATHLEEN M. WILLIAMS
                          FEDERAL PUBLIC DEFENDER

By: *[signature]*
                          Michael Caruso
                          Assistant Federal Public Defender
                          Florida Bar No. 0051993
                          150 W. Flagler Street, Suite 1700
                          Miami, Florida 33130-1556
                          (305) 530-7000, Ext. 135
                          (305) 536-4559, Fax

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument was mailed the __14th__ day of March, 2003, to Jack B. Patrick, Senior Trial Attorney, Fraud Section, Criminal Division, United States Department of Justice, 10th & Constitution Avenue, N.W., Bond Building, Room 3114, Washington, DC 20005.

By: _____
Michael Caruso

J:\Trainor, William P. Reg09598-158\Pleadings\supp memo sol.wpd

## FAXBACK SERVICE LIST

Michael Caruso, Esq.
Assistant Federal Public Defender
150 West Flagler Street
Suite 1700
Miami, Florida 33130
Tel: (305)530-7000, ext. 135
Fax: (305)536-4559
Counsel for William P. Trainor


Assistant United States Attorney's Office
99 N.E. 4th Street
Miami, Florida 33132
Tel:  (305)961-9100
Fax:  (305)530-7976
Counsel for the Government

Jack B. Patrick, Esq.
Senior Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
10th & Constitution Avenue, N.W.
Bond Building, Room 3114
Washington, D.C. 2005
Tel: (205)514-9842
Fax: (205)514-0152
Counsel for the Government