UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 01-6215-CR-JORDAN

FILED by _____ D.C.
MAY 13 2003
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| vs. | ) |
| WILLIAM P. TRAINOR | ) |

### ORDER GRANTING MOTION TO DISMISS COUNTS AS BARRED BY THE STATUTE OF LIMITATIONS

Enacted almost 20 years ago, 18 U.S.C. § 3292 allows for the tolling of the statute of limitations in a criminal case upon ex parte application of the government if the judge to whom the application is presented "finds by a preponderance of the evidence" (1) that the government has made an official request for evidence located in a foreign country, and (2) that "it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." The question presented in this case – remarkably a question on which there appear to be no reported decisions – is whether the government can satisfy the statutory preponderance of the evidence standard by making factual representations in an unsworn and unverified application unaccompanied by declarations, affidavits, or exhibits. Because such representations have no evidentiary value, I conclude that the answer is no, and hold that there was no valid tolling of the statute of limitations in this case. Accordingly, William Trainor's motion to dismiss Counts 1-10, 12-14, and 16-21 of the superseding indictment is granted.

I

Based upon the documents and declarations submitted by the parties, I make the following findings of fact.

A

On October 17, 2000, the Criminal Division of the Department of Justice's Office of International Affairs sent transmittal letter to the Ministry of Justice in Switzerland. Attached to the letter was a memorandum from OIA Deputy Director Thomas Snow requesting assistance in *S.E.C.*



*v. Trainor et al.*[1] In summary, Mr. Snow's memorandum explained that in August of 1998 the Securities and Exchange Commission had filed a civil complaint against William Trainor and others (including New England Diagnostics, Inc. and Novatek International, Inc.) for violation of the federal securities laws, and that the DOJ was investigating whether Mr. Trainor and others had committed the criminal offenses of securities fraud, mail fraud, wire fraud, and money laundering. According to the memorandum, the SEC needed bank records and other documents, as well as testimony, from Andreas Schweitzer, a Swiss citizen who was listed as NED's owner. After relating the facts concerning the alleged fraudulent scheme, the memorandum provided the following information about Mr. Schweitzer: "Date of Birth: Unknown; Place of Birth: Unknown; Citizenship: Believed to be Swiss; Race: Caucasian; Sex: Male; Social Security Number: Unknown; Address: Seestrosso No. 1, Cham 6330, Switzerland." Switzerland was asked to obtain various documents in the possession of Mr. Schweitzer (including documents concerning Mr. Trainor, NED, and Novatek), and to obtain the sworn testimony of Mr. Schweitzer concerning his involvement with the individuals and entities described in the memorandum (with questions to be provided by the SEC and the DOJ in advance).

On March 30, 2001, the Swiss Ministry of Justice sent the following facsimile in response to the request for assistance:

> Per your facsimile dated March 27, 2001, we must unfortunately inform you that we have not been able to locate the desired person at the address provided in the fax. In addition, we were unable to find the firm Kenk & Schweitzer. Therefore, we ask that you please provide us with additional information regarding Andreas Schweitzer (DOB, possible language that he speaks) so as to not ask the incorrect authorities to execute the request.

This facsimile was forwarded to one of the prosecutors in this case on the same day.

On April 2, 2001, the OIA provided the Swiss authorities with another possible address for Mr. Schweitzer.

B

On April 6, 2001, the government filed in the Southern District of Florida an ex-parte, sealed, and unsworn motion to toll the statute of limitations, pursuant to 18 U.S.C. § 3292, from October

---

[1] Mr. Snow's memorandum was dated January 21, 2000.

17, 2000 – the date the OIA request for assistance and memorandum were sent to Switzerland – to the date on which Switzerland would take final action on the request. The proposed orders to seal and to toll the statute of limitations submitted by the government had a signature line for a magistrate judge, and the caption of the government's motion listed Novatek as the subject of the grand jury investigation. The clerk's office informed the prosecutor that the caption could not contain the subject's name, that the orders could only be signed by a district judge, and that the motion would be returned to him.[2] Believing the motion was defective, the prosecutor filed a second ex-parte, sealed motion on April 10, 2001.

This second motion – which had, as attachments, the OIA request for assistance and memorandum – was not sworn or verified. It was also not accompanied by any declarations, affidavits, or other exhibits. The motion described the grand jury investigation concerning Novatek and related entities, and explained that the investigation was focusing on allegations that, from June of 1994 to December of 1996, Mr. Trainor and Vincent Celentano fraudulently induced investments in companies they controlled, fraudulently gained control of Novatek, and subsequently used Novatek to engage in a pump and dump securities fraud scheme. The motion stated that Messrs. Trainor and Celentano had falsely alleged that NED, one of the companies involved in the fraud scheme, was owned by Mr. Schweitzer, a Swiss businessman. The grand jury investigation had revealed that NED was actually operated out of the home of Mr. Trainor's daughter in Massachusetts.

The second motion also summarized the OIA memorandum from Switzerland, and explained that the issue concerning ownership and control of NED was of critical importance to the government's investigation. If NED was controlled by Messrs. Trainor or Celentano (or their nominees) then any license value flowing from NED was created through a series of related party transactions. After quoting § 3292(a)(1) & (d), the motion argued that the attached OIA request for assistance satisfied the statute's official request requirement. As to the other statutory requirement – that it reasonably appear that the evidence sought was in a foreign country – the motion stated:

---

[2]The prosecutor subsequently received a copy of the defective motion with a file-stamp date of April 6, 2001. There is no indication that this motion was ever submitted to a district judge.

3

> Documents obtained by the grand jury have identified [Mr.] Schweitzer as the holder of bearer stock of NED, as a Swiss resident, and have identified his business address as being in Switzerland. Agreements pertinent to NED and [Mr.] Schweitzer have identified [Mr.] Schweitzer's address in Switzerland. Witnesses interviewed by the Federal Bureau of Investigation have also stated that [Messrs.] Trainor and Celentano represented to them that [Mr.] Schweitzer was the owner of NED and have identified [Mr.] Schweitzer as a Swiss resident.

None of the referenced documents, agreements, or interviews, however, were attached to the motion.

Finally, the second motion explained that the Swiss authorities had requested additional information regarding Mr. Schweitzer and the matters being investigated. Citing *United States v. Bischel,* 61 F.3d 1429, 1434 (9th Cir. 1995), the motion asserted that Switzerland had not yet taken final action on the OIA request for assistance.

C

On May 10, 2001, Judge Gonzalez signed a sealed order granting the government's second ex parte motion and tolling the statue of limitations under § 3292 from October 17, 2000, to the date when Switzerland took final action on the OIA request for assistance (a period not to exceed three years). Judge Gonzalez found by a "preponderance of the evidence" that an official request was submitted to the Swiss authorities on October 17, 2000, and that "it reasonably appears that . . . [the] evidence [requested] is in Switzerland."

D

In June of 2001, the Swiss police located Mr. Schweitzer at the second address provided by the OIA. In August and October of 2001, the OIA submitted follow-up inquiries to the Swiss Ministry of Justice for an update on the request for assistance.

A grand jury returned an indictment against Mr. Trainor on September 20, 2001, charging him with 11 counts of wire fraud in violation of 18 U.S.C. § 1343 (April 30, 1996 (Count 1); May 28, 1996 (Count 2); May 29, 1996 (Count 3); June 5, 1996 (Count 4); August 15, 1996 (Count 5); August 15, 1996 (Count 6); August 16, 1996 (Count 7); August 29, 1996 (Count 8); September 3, 1996 (Count 9); September 19, 1996 (Count 10); and September 26, 1996 (Count 11); 2 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I) (June 3, 1996 (Count 12); and June 7, 1996 (Count 13)); 2 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I)

(March 13, 1996 (Count 14); and October 10, 1996 (Count 15)); and 5 counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 (April 5, 1996 (Count 16); April 8, 1996 (Count 17); April 30, 1996 (Count 18); August 30, 1996 (Count 19); September 6, 1996 (Count 20); and September 9, 1996 (Count 21)). The grand jury returned a superseding indictment on June 13, 2002, adding 3 counts of tax evasion in violation of 26 U.S.C. § 7201 for tax years 1996 (Count 22), 1997 (Count 23), and 1998 (Count 24).

E

On October 3, 2001, the Swiss Ministry of Justice advised the OIA that the request for assistance was with the public prosecutor in Geneva "in order to be executed." On February 21, 2002, Switzerland reported to the OIA that a Swiss magistrate had interviewed Mr. Schweitzer. The Swiss authorities sent the official statement of the interview to the DOJ on March 21, 2002. The DOJ continued to request that the Swiss authorities obtain further information and evidence, and sought to have its prosecutors interview Mr. Schweitzer. On October 29, 2002, the Swiss authorities informed the DOJ that Mr. Schweitzer would testify in Switzerland in November or December of 2002, but was not willing to be recorded by visual means.

II

Congress enacted § 3292 in 1984. It provides, in relevant part, as follows:

> (a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense *if the court finds by a preponderance of the evidence* that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.
>
> (2) The court shall rule upon such application not later than thirty days after the filing of the application.
>
> (b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes *final action* on the request.

(emphasis added). As some have noted, § 3292 is unique in that it is apparently the only provision which permits tolling of the statue of limitations based on matters which are beyond the defendant's

ability to influence. *See* A. Abramovsky & J Edelstein, *Time for Final Action on 18 U.S.C. § 3292,* 21 Mich. J. Int'l Law 941, 965 (2000) (comparing § 3292 to 18 U.S.C. §§ 3284, 3290).

It is undisputed that, absent tolling of the statute of limitations under § 3292, Counts 1-10, 12-14, and 16-21 of the superseding indictment are time-barred. This is because the 5-year statute of limitations, *see* 18 U.S.C. §3282, would normally allow only the charging of substantive offenses which took place on or after September 20, 1996 – i.e., within 5 years of the date the initial indictment was returned.

The government contends that Judge Gonzalez properly tolled the statute of limitations, and argues that there was tolling from October 17, 2000, to the date the initial indictment was returned because Switzerland never took "final action" before then on the OIA's request for assistance. Mr. Trainor, on the other hand, mounts several challenges to tolling.

A

Mr. Trainor first argues that Judge Gonzalez was without jurisdiction to grant the government's second motion. According to Mr. Trainor, the government's first motion, which was filed on April 6, 2001, triggered the 30-day judicial approval period set forth in § 3292(a)(2). Because Judge Gonzalez did not issue his ruling until May 10, 2001, the argument continues, there was no suspension of the statute of limitations. The government responds that the 30-day period is not jurisdictional, as Mr. Trainor contends, and that even if it is, the date on which the period began to run was April 10, 2001, the second motion on filed.

As far as I can tell, no court has addressed whether the 30-day period is jurisdictional. I doubt that it is. Aside from requiring an application or motion to be filed prior to the return of an indictment, § 3292 places no time limits on when the application or motion must be submitted. *See United States v. Miller,* 830 F.2d 1073, 1076 (9th Cir. 1987). Indeed, nothing in § 3292 prevents the government from filing successive applications if the judge determines that prior applications were insufficient. What this means, I think, is that the 30-day period constitutes a window of time during which an application remains active. If the 30-day period comes and goes, the government must file another application, and the judge will then have 30 days from the date of that filing to act on the subsequent application.

In any event, I find it unnecessary to issue any definitive pronouncement on this issue, because the record evidence in this case shows that the government's first motion was rejected by the clerk's office for failing to comply with certain filing requirements and was returned to the prosecutor. There is also no indication that this first motion was ever presented to a district judge. Thus, I conclude that the government's second motion, filed on April 10, 2001, was the operative document. Because Judge Gonzalez granted this motion within 30 days of its filing – i.e., on May 10, 2001 – § 3292(a)(2) was satisfied.

B

The second argument made by Mr. Trainor is that § 3292 does not contemplate ex parte proceedings, and that even if it does, such proceedings violate his due process rights. I disagree.

The statute says nothing about how the application or motion is to be presented to the judge. The text does not mention ex parte proceedings, notice to parties, or adversarial proceedings of any kind. Some courts have interpreted this silence as precluding ex parte submissions, while others have drawn the opposite inference. *Compare In re Grand Jury Investigation,* 3 F.Supp.2d 82, 83 (D. Mass. 1998) (ex parte application not allowed because "[n]othing in section 3292 . . . expressly contemplates secretly extending certain statutes of limitation as to certain individuals"), *with DeGeorge v. District Court,* 219 F.3d 930, 937 (9th Cir. 2000) (rejecting defendant's argument, in mandamus proceeding, that notice and adversarial proceeding are required because "[n]owhere in the section does it state that the party whose statute of limitation is being suspended is entitled to notice or a hearing").

It is true, as Mr. Trainor says, that ex parte proceedings are generally disfavored, as explained in cases like *In re Paradyne Corp.,* 803 F.2d 604, 608-12 (11th Cir. 1986), but the grand jury is a long-standing recognized exception to our tradition of open legal proceedings. *See, e.g.,* FED. R. CRIM. P. 6(e); *United States v. Sells Engineering Corp.,* 463 U.S. 418, 423 (1983). I therefore concur with the analysis of the district court (adopting the report of the magistrate judge) in *United States v. King,* 2000 WL 362026, *20 (W.D.N.Y. 2000):

> [A]n ex parte application to suspend a statute of limitations to facilitate a grand jury investigation is consistent with the long-established principle that grand jury proceedings are secret and non-adversarial in nature. Significantly, § 3292 specifically requires as a condition to an application for an order of suspension that

>there be a grand jury empaneled to conduct the subject investigation. It is also unlikely Congress, without more explicit direction, would have intended otherwise, thus embroiling the court in subsidiary litigation over who should be given notice and the extent to which such persons should be permitted to oppose the application.

Although some commentators have posited that "a requirement that grand jury targets be notified is implicit in the language of [§] 3292," *Final Action,* 21 MICH. J. INT'L LAW at 965, I do not find that argument persuasive. First, tolling under § 3292 is offense-specific, and not person-specific. *See United States v. Neill,* 952 F.Supp. 831, 833 (D.D.C. 1996). Second, even though targets and subjects are often advised about grand jury investigations, *see generally* U.S. DEPT. OF JUSTICE, U.S. ATTORNEY'S MANUAL, at § 9-11.151 (June 2000), such individuals are not entitled to be kept abreast of what specific things the grand jury is doing behind closed doors.

In sum, an application under § 3292 can be made ex parte, and does not violate the due process rights of a defendant who is later indicted. *See United States v. Torres,* 318 F.3d 1058, 1061 (11th Cir. 2003) ("Under § 3292, the government may apply, ex parte, for suspension of the statute of limitations[.]"). As explained below, however, the ex parte nature of a § 3292 proceeding and the substantive interests affected require the government to submit sufficient evidence to satisfy the statute's evidentiary burdens.

C

The third attack by Mr. Trainor concerns the government's purported lack of due diligence in pursuing the evidence sought from Switzerland. Mr. Trainor points out the that memorandum by Mr. Snow requesting assistance was dated January 21, 2000, yet was not transmitted to the Swiss authorities until October 17, 2000. This unexplained delay, says Mr. Trainor, shows that the government was not diligent.

There is some support in the literature for reading a due diligence requirement into § 3292. *See Final Action,* 21 MICH. J. INT'L LAW at 968. As the Fifth Circuit put it, the statute "should not be an affirmative benefit to prosecutors, suspending the limitations period, pending completion of an investigation, whenever evidence is located in a foreign land." *United States v. Meador,* 138 F.3d 986, 994 (5th Cir. 1998). On the other hand, § 3292(c)(1) places a 3-year limit on the tolling of the statute of limitations, and the Ninth Circuit has therefore refused to imply a due diligence obligation. *See United States v. Bischel,* 61 F.3d 1429, 1435 (9th Cir. 1995). *See also Torres,* 318 F.3d at 1064

(characterizing the 3-year limit as a "safeguard" by Congress to protect against unlimited discretion by the government).

Again, there is no need to enter the fray. Even if due diligence is inherent in § 3292, the government in this case satisfied that requirement. From the time that it transmitted the OIA request for assistance and memorandum, the government remained in contact with the Swiss authorities, provided additional information, and followed up on the status of its request. The fact that the government waited 9 months to transmit Mr. Snow's memorandum to the Swiss authorities is of no moment, because the tolling period begins only when the request for assistance is made. *See* § 3292(b); *Torres,* 318 F.3d at 1062. In other words, Mr. Trainor was not adversely affected by this delay.[3]

### D

The fourth argument made by Mr. Trainor is that any tolling of the statute of limitations ended on March 30, 2001, when the Swiss authorities informed the OIA that they could not locate Mr. Schweitzer or his firm at the addresses provided by the government. In Mr. Trainor's view, this response by Switzerland constituted "final action" within the meaning of § 3292(b). The government responds that it provided the Swiss authorities with the additional information requested about Mr. Schweitzer, and that Mr. Schweitzer was not interviewed by the Swiss until after the indictment was returned, so that there was no "final action" prior to the return of the indictment.

In *Torres,* 318 F.3d at 1065, the Eleventh Circuit held that "final action" under § 3292(b) "occurs when a foreign court or authority provides a dispositive response to each of the items listed in the government's official request for information." Under *Torres*, there was no "final action" by Switzerland in this case prior to the return of the indictment because the OIA requested that Mr. Schweitzer be interviewed, and that was not accomplished until February of 2002. Contrary to Mr. Trainor's contention, the facsimile sent by the Swiss Ministry of Justice to the OIA on March 30,

---

[3] I reject any claim by Mr. Trainor that the information sought by the government in its request for assistance and memorandum was merely marginal, and not material. As alleged in Mr. Snow's memorandum and in the government's motion, Mr. Trainor and Mr. Celentano had falsely represented that Mr. Schweitzer was the owner of NED, one of the companies allegedly used to perpetrate the pump and dump securities scheme. Mr. Schweitzer was therefore a witness with relevant and material information.

2001, did not constitute "final action" because the Swiss authorities requested additional information concerning Mr. Schweitzer and his whereabouts. A request by a foreign government for further information so that it can comply with or process a request for assistance does not constitute "final action."

E

As noted earlier, the government's second motion was not sworn or verified, and was not accompanied by any declarations, affidavits, or exhibits (aside from the OIA request for assistance and memorandum). Mr. Trainor asserts that there was no valid tolling of the statute of limitations because the government did not present Judge Gonzalez with any evidence to meet the preponderance of the evidence standard. The government responds that § 3292 only requires the filing of an application or motion, and permits a judge to make the necessary findings based on a proffer of evidence or hearsay. The government also says that the Federal Rules of Evidence do not apply to proceedings under § 3292.

The starting point is, of course, the text of § 3292. The government is correct in saying that the statute does not prescribe the form of the application or motion submitted by the government – it only says "upon application of the United States ... indicating that evidence of an offense is in a foreign country." *See Final Action,* 21 MICH. J. INT'L LAW at 971. If that were all the statute said, the government might be right in arguing that a so-called proffer of information would be sufficient to permit a judge to toll the statute of limitations. *See* WEBSTER'S NEW WORLD COLLEGE DICTIONARY 726 (4th ed. 2000) (indicate means "to direct attention to; point to or point out; show") But there is more. Significantly, § 3292(a) permits tolling only if the judge "finds by a preponderance of the evidence" (1) that an official request has been made for evidence in a foreign country, and (2) that "it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." The critical issue is the meaning of the phrase "finds by a preponderance of the evidence."

The government points out that, in contrast to § 3292, the statutes and rules governing ex parte applications for wiretaps, *see* 18 U.S.C. § 2518(1), and search warrants, *see* FED. R. CRIM. P. 41(d), expressly mention testimony under oath or affirmation. The government is correct, but it is

10

still necessary to figure out what § 3292(a)(1) means when it says that the judge must make findings by a preponderance of the evidence under § 3292(a)(1).

Words in a statute are given their "ordinary, contemporary, common meaning absent an indication Congress intended them to bear some different import." *Williams v. Taylor,* 529 U.S. 420, 431 (2000). *See also Torres,* 318 F.3d at 1061-62. And where "Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice it presumably knows and adopts the cluster of ideas that were attached to each borrowed work in the body of learning and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morisette v. United States,* 342 U.S. 246, 263 (1952). *Accord United States v. Turley,* 352 U.S. 407, 411 (1957) ("Where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give the term its common-law meaning.").[4] Understanding that canons of construction and rules of interpretation are artificial constructs which do not control every situation, *see generally* A. SCALIA, A MATTER OF INTERPRETATION 26-29 (1997), the canon quoted above seems applicable here. The term "preponderance of the evidence" is a longstanding term of art, and neither the text of the statute or the legislative history suggests ascribing that term a different meaning. *See* H.R. Rep. No. 98-907, *reprinted in* 1984 U.S.C.C.A.N. 3578, 2584.

The Supreme Court has looked to legal and lay dictionaries to define statutory terms, *see, e.g., National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 n.5 (2002), and I will do the same here, beginning with the word "evidence." In the legal community, evidence is "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." BLACK'S LAW DICTIONARY 576 (7th ed. 1999). In the lay world, it is defined in a similar way: "*Law* – something presented in a legal proceeding, as a statement of a witness, an object, etc., which bears on or establishes a point in question: distinguished from TESTIMONY and PROOF." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 493 (4TH ed. 2000). Turning to the phrase "preponderance of the evidence," the Supreme Court has provided a thorough definition:

---

[4]For a more recent statement of this canon of statutory construction, see *Neder v. United States,* 527 U.S. 1, 21 (1999).

11

> The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence. In other words, the preponderance standard goes to how convincing the evidence in favor of a fact must be in comparison with evidence against it before that fact may be found, but that does not determine what facts must be proven as a substantive part of a claim or defense. Unlike other standards of proof such as reasonable doubt and clear and convincing evidence, the preponderance standard "allows both parties to share the risk of error in roughly equal fashion, " except that "when the evidence is evenly balanced, the [party with the burden of persuasion] must lose[.]

*Metropolitan Stevedoring Co. v. Rambo,* 521 U.S. 121, 137 n.9 (1997) (citations omitted).

Given these definitions, I conclude that for a judge to make the requisite § 3292(a)(1) findings by a "preponderance of the evidence," he must be presented with evidence of some sort. That means that the government's application or motion (assuming it has the necessary factual information) must be sworn or verified, or must be accompanied by affidavits, declarations, exhibits, or other materials of evidentiary value. In other words, an unsworn proffer of facts in an application or motion will not do. *See Final Action,* 21 MICH. J. INT'L LAW at 972 ("the district court should . . . require the prosecution to substantiate its application with evidentiary facts rather than conclusory allegations"). Simply put, if a judge is going to make factual findings by a "preponderance of the evidence," then evidence he must have. This interpretation of the statutory language, in my view, properly accounts for the ex parte nature of the proceeding and the substantive interests at issue by ensuring that there is some evidentiary basis for the government's tolling request. It is also buttressed by how courts have applied and interpreted the preponderance of the evidence standard in other settings.

Starting with the sentencing context, statements in a presentence investigation report, when challenged by a defendant, must be supported by "some reliable proof" from which the judge can conclude that it is not unlikely that such statements are true. *See, e.g., United States v. Delgado,* 56 F.3d 1357, 1371 (11th Cir. 1995); *United States v. Restrepo,* 832 F.2d 146, 148-49 (11th Cir. 1987). *Cf. United States v. Askew,* 193 F.3d 1181, 1183 (11th Cir. 1999) ("Preponderance of the evidence is not a high standard of proof. It is not, however, a toothless standard either, and a district court may not abdicate its responsibility to ensure that the prosecution meets this standard before adding

months or years onto a defendant's prison sentence."). This requirement of producing evidence at sentencing applies to the defense as well. When seeking a downward departure, for example, an attorney's representation that certain facts exist cannot be used as a substitute for actual evidence of those facts. *See, e.g., United States v. Kapelushnik,* 306 F.3d 1090, 1095 (11th Cir. 2002) ("The defendants do not point us to any evidence in the record to support a finding that they were responsible for the return of some of the stolen coins, and we find no such evidence in our review of the record. The only grounds on which the court might have relied in making such finding are the allegations by defense counsel at sentencing, but as we have held previously, such allegations are an insufficient basis upon which to grant a downward departure."); *United States v. Onofre-Segarra,* 126 F.3d 1308, 1310-11 (11th Cir. 1997) ("The arguments of counsel and the challenged conclusions of the presentence investigation report . . . are generally an insufficient basis upon which to depart from the guidelines.").

Similarly, the unsupported claims of the government will not carry the day in a proceeding by a criminal defendant for return of property. *See* FED. R. CRIM. P. 41(e) (providing that a judge "shall receive evidence on any issue of fact necessary to the decision of the motion"). When the government claims that the property at issue has been destroyed or that there is a legitimate reason for retaining the property, it cannot proceed by proffer, and reliance by the judge on unsworn statements in a government response constitutes reversible error. *See United States v. Potes Ramirez,* 260 F.3d 1310, 1314 (11th Cir. 2001) ("Although the government alleges in its pleadings that the property sought by Potes Ramirez was destroyed, these pleadings are not verified and no supporting affidavits have been filed. There is no evidence in the record that Potes Ramirez's property was destroyed. Therefore the government has not met its burden in this case, and the district court was incorrect to deny Potes Ramirez's motion without requiring the government to submit at least some evidence of the property's destruction.").

The same principle governs in the summary judgment context. It is well-settled that a party opposing a motion for summary judgment cannot create a material issue of fact by simply resting on the "opinions, allegations, and conclusory statements of counsel." *Bowden v. Wal-Mart Stores, Inc.,* 124 F.Supp.2d 1228, 1236 (M.D. Ala. 2000) (citing *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir. 1998)).

The government argues, however, that the Federal Rules of Evidence do not apply in miscellaneous proceedings like those under § 3292. *See* FED. R. EVID. 1101(d)(3). This argument, I think, puts the proverbial substantive cart before the interpretive horse. That the Federal Rules of Evidence may not apply is not dispositive, because § 3292(a)(1) requires a court to make findings by a "preponderance of the evidence," and that means having evidence of one kind or another. The government may be right in saying that the criteria for consideration of evidence under § 3292 are relaxed under Rule 1101(d)(3), so that, for example, hearsay may be considered. But this does not eliminate the need for evidence of some type. Even in sentencing proceedings, where hearsay is admissible, the judge must find that hearsay evidence is sufficiently reliable before considering it. *See, e.g., United States v. Zlatogur,* 271 F.3d 1025, 1031 (11th Cir. 2001). If, as the government says, Rule 1101(d)(3) governs, there was nothing in the motion or the OIA memorandum from which Judge Gonzalez could have made the necessary reliability findings. In any event, the government is mistaken in referring to the information contained in the unsworn motion and the OIA memorandum as hearsay evidence. It is not even that, because no one verified the motion or memorandum and no affidavits, declarations, or exhibits were submitted.

The government's strongest argument is that it is allowed to proceed by proffer in certain proceedings where the Federal Rules of Evidence do not apply. The best example it gives is a pretrial detention proceeding pursuant to 18 U.S.C. § 3142(f), where judges can make findings of risk of flight or danger to the community based on proffers by the government. *See United States v. Gaviria,* 828 F.2d 667, 669-70 (11th Cir. 1987).[5] That scenario, however, is at best an imperfect analogy. First, the Eleventh Circuit held in *Gaviria* that government proffers could be used in pretrial detention proceedings because § 3142(f) was patterned after a District of Columbia statute (1) which had been construed to permit both the government and the defense to proceed by proffer, and (2) whose legislative history indicated that proffers were permissible. *See id.* at 669. There are no such reported judicial decisions or legislative history with respect to § 3292. Second, § 3142(f) expressly provides for the use of proffers by the defendant, and it is reasonable to allow the

---

[5]Risk of flight must be established by a preponderance of the evidence, while danger to the community must be established by clear and convincing evidence. *See, e.g., United States v. Quartermaine,* 913 F.2d 910, 917 (11th Cir. 1990).

14

government to proceed in the same manner. Third, unlike a proceeding under § 3292, a pretrial detention hearing under § 3142(f) is not ex parte. The very terms of the pretrial detention statute permit a defendant to have counsel, to testify, to present witnesses, to cross examine witnesses, and (like the government) to present information by proffer. There are, in short, procedural mechanisms available under § 3142(f) to ensure that a government proffer will not be accepted without some adversarial testing. In the absence of such safeguards in an ex parte proceeding under § 3292 – a proceeding which can result in the tolling of the statue of limitations for up to 3 years – the statute should be interpreted, according to its ordinary meaning, to require the government to present evidence of some sort to secure tolling. The government is not just looking for evidence when it submits an application under §3292 – it is requesting substantive relief by asking that the normal period of time in which to bring criminal charges be extended. *See Torres,* 318 F.3d at 1065 n.11 (explaining the importance of statutes of limitation).

Requiring the submission of actual evidence does not place an onerous burden on the government. The government can, as it does when it seeks a wiretap order or a search warrant, submit the declaration or affidavit of a law enforcement agent setting out factual information on which the judge can make the statutory findings by a preponderance of the evidence. And like wiretap or search warrant affidavits, an affidavit under § 3292 may contain and recite evidence which would normally constitute hearsay. Such a filing – which is routine for prosecutors and agents – will not cause the government any undue delay, particularly because there is no statutory time limit (aside from filing before the return of an indictment) for the submission of an application or motion under § 3292. It will also not impede expeditious rulings.[6]

---

[6]In opposing Mr. Trainor's motion to dismiss, the government filed a declaration – totaling 4 pages – from an FBI special agent which provides an evidentiary basis for the second statutory finding under § 3292(a)(1). I have considered the possibility of considering this declaration to supplement the unsworn motion submitted to Judge Gonzalez in April of 2001, but § 3292(a)(1) requires that the application or motion be submitted prior to the return of an indictment. Just as the government would not be able to correct deficiencies in an affidavit supporting an application for a wiretap order or a search warrant if the affidavit was later challenged as insufficient, the government may not now retroactively supplement the gaps in its initial § 3292 submission.

F

Turning now to the facts of this case, I conclude that Judge Gonzalez's first factual finding under § 3292(a)(1) – that an official request for evidence had been made to Switzerland – was supported by the government's second motion and was not clearly erroneous. The government attached to its motion the OIA request for assistance, as well as the transmittal letter, and these documents were sufficient to support the first statutory requirement, as the Fifth Circuit held in *United States v. Wilson,* 249 F.3d 366, 371 (5th Cir. 2001).

It is Judge Gonzalez's second § 3292(a)(1) finding – that it reasonably appeared that the evidence requested was in Switzerland – which cannot stand. The government stated in its unsworn motion that unspecified documents had identified Mr. Schweitzer, a Swiss resident, as the bearer holder of NED stock; that such documents had listed a Swiss business address for Mr. Schweitzer; that agreements identified an address in Switzerland for Mr. Schweitzer; and that witnesses interviewed by the FBI had also identified Mr. Schweitzer as a Swiss resident. These allegations had no evidentiary value, *see, e.g., Potes Ramirez,* 260 F.3d at 1314, and even if they did, the application did not identify the referenced documents and did not provide the names of the witnesses or the dates when they were interviewed. Without such detail, these allegations could not support the second finding. *Cf. Luke Records, Inc. v. Navarro,* 960 F.2d 134, 138-39 (11th Cir. 1992) (sheriff failed to carry his burden of proving, even by a preponderance of the evidence, that musical recording was obscene, where he introduced no evidence – except for tape itself – that recording had no serious artistic value).

To the extent that the government relies on any information contained in the OIA memorandum, that reliance is misplaced. Again, there was no evidence (not even of the hearsay kind) contained in the memorandum because the memorandum (like the motion) was unsworn and unaccompanied by any affidavits, documents, or exhibits. At most the OIA memorandum contained a proffer, but even that proffer did not prove that it reasonably appeared (at the time of the request or at the time of the application) that the evidence requested was in Switzerland. The memorandum – which was less detailed than the motion on this issue – merely stated that Mr. Schweitzer was a Swiss citizen (or was believed to be a Swiss citizen), and listed an address for him in Switzerland.

III

As I read § 3292, the government can proceed ex parte when it submits an application or motion to toll the statute of limitations. This non-adversarial setting, however, carries responsibilities for both the government and the judge. In order for a judge to make the statutory factual findings by a preponderance of the evidence and ensure that the government has met its burden, he must have something of evidentiary value before him. It is up to the government to create a sufficient record to support the tolling order it requests, and if it fails to do so it risks that the statute of limitations will continue running, as it did here. Counts 1-10, 12-14, and 16-21 of the superseding indictment are dismissed.

DONE and ORDERED in chambers in Miami, Florida, this 13th day of May, 2003.

_____
Adalberto Jordan
United States District Judge

Copy to:   Jack B. Patrick & Jonathan Barr, DOJ (fax: 202-514-0152 / 305-536-5321)
           Michael Caruso, AFPD (fax: 305-536-4559)